**HART ENTERPRISES, INC., Plaintiff,**

v.

**Francis CHIA, Childbro Toys Ltd., Easebon Services Ltd., Joe Lingg, and Harry Moorhouse, Defendants.**

Civ. No. 92–347–FR.

United States District Court,
D. Oregon.

June 1, 1992.

Opinion on Motion for Preliminary Injunction June 29, 1992.

Peter E. Heuser, Pierre C. Van Rysselberghe, Kolisch, Hartwell, Dickinson, McCormack & Heuser, Portland, Or., for plaintiff.

Daniel P. Chernoff, Chernoff, Vilhauer, McClung & Stenzel, Portland, Or., Jesse Rothstein, Amster, Rothstein & Ebenstein, New York City, for defendants.

OPINION

FRYE, District Judge:

The matter before the court is the motion of defendants, Francis Chia, Childbro Toys Ltd., Easebon Services Ltd., Joe Lingg, and Harry Moorhouse (hereinafter, Childbro), for a temporary restraining order (# 7–1) and a preliminary injunction as to plaintiff's misleading and threatening communications to the trade (#7–2).

BACKGROUND

Plaintiff, Hart Enterprises, Inc. (Hart), of Vancouver, Washington and defendant

Childbro Toys Ltd. and its related parties of Hong Kong (Childbro) are competitors who manufacture and market novelty vibrating pens. Hart markets its pens under the trademark, SQUIGGLE WIGGLE WRITER, and Childbro markets its pens under the trademark, DIZZY DOODLER.

The filing of this action was precipitated by the distribution of a promotional flier by Childbro, which describes and pictures a novelty vibrating pen called the DIZZY DOODLER, which has two speeds and includes a set of stencils, with the specific neon colors also depicted. Hart brought this action against Childbro and its related parties (Childbro) charging them with trade secret misappropriation arising out of the manufacture and marketing of the DIZZY DOODLER pen. Hart alleges that in marketing and selling the DIZZY DOODLER pen, Childbro has utilized the proprietary trade secrets of Hart.

Subsequent to the filing of this action, Hart sent letters to several trade publications and to independent sales representatives setting forth the factual scenario leading up to the filing of this action and specifically identifying the trade secrets alleged to be misappropriated by Childbro. The letters had appended to them copies of the first amended complaint and referred to O.R.S. 646.461. For example, Hart sent the following letter dated March 4, 1992 to Fred Meyer, Inc.:

> We represent Hart Enterprises, Inc. of Vancouver, Washington ("Hart"), which is the owner of trade secrets which have been misappropriated by Francis Chia ("Chia") of Childbro Toy, Inc. ("Childbro"), and which have been incorporated, without our client's consent, in the "DIZZY DOODLER" pen and accessory sets which Fred Meyer has recently purchased from Childbro. Hart's product is called "SQUIGGLE WIGGLE WRITER". Both products are ball-point pens with eccentrically mounted, motor-driven weights positioned opposite the writing or drawing end of the pens. With each product, activation of the motor causes the pen to draw loops when the pen is held to paper and moved.

In an effort to commercialize its new product concept, Hart entered into a manufacturing agreement with Childbro, under which Childbro agreed to produce molds, SQUIGGLE WIGGLE WRITER pens and accessories for Hart. Childbro was obligated to maintain Hart's confidences and not to make any unauthorized use of Hart's product design and marketing plans for the SQUIGGLE WIGGLE WRITER pens.

Hart recently became aware that Childbro has flagrantly breached its duty of confidentiality by using Hart's trade secrets to produce and sell its own pens under the name DIZZY DOODLER in direct competition with Hart. The DIZZY DOODLER pen and accessory set is substantially the same product which Childbro previously agreed to manufacture for Hart. For your information, the trade secrets which Childbro has misappropriated from Hart include: the total pen and accessory configuration, the neon ink colors, the stencils, the two-speed switch, and price and sales strategies and projections. Also, Childbro's misappropriation of Hart's trade secrets has deprived Hart of the manufacturing and marketing head start which it otherwise would have realized.

Our client has authorized us to file suit against Francis Chia, Childbro and all other willful conspirators to seek any and all judicial remedies which Oregon law provides for misappropriation of trade secrets, as defined under O.R.S. § 646.461 *et seq.* Based on our current knowledge, we believe Fred Meyer's participation in Childbro's unauthorized use of our client's trade secrets, has been innocent. However, this letter will serve as notice to Fred Meyer that any further use or sale of DIZZY DOODLER pens or accessories or any similar products by Fred Meyer will be considered a willful misappropriation of Hart's trade secrets for which Hart will seek judicial remedies.

Accordingly, on behalf of Hart, we demand that Fred Meyer cease and desist all plans to market DIZZY DOODLER pens or any similar product purchased

from Childbro. Any inventory which Fred Meyer currently has or receives must be returned to Childbro.

In order to avoid any further irreparable injury to our client, we intend to act quickly. We expect Fred Meyer to fully comply with our client's demand immediately upon receipt of this letter. If Fred Meyer does not comply, we will be forced to name Fred Meyer as a defendant in the lawsuit we are preparing to file against Childbro and its co-conspirators.

Please provide us with your written assurance by March 9 that you will cancel the order with Childbro and will respect Hart's trade secrets. In the interim, if you have any questions or would like to know more about the grounds for Hart's allegations, feel free to contact me.

Exhibit 1 attached to Exhibit B to Plaintiff's Opposition to Defendants' Motion for Temporary Restraining Order and Preliminary Injunctive Relief.

## CONTENTIONS OF THE PARTIES

Childbro moves the court for an order enjoining Hart from issuing further communications to the trade, including trade press, and from threatening customers and prospective customers of Childbro with a lawsuit if such customers purchase or otherwise deal in the DIZZY DOODLER novelty vibrating pen manufactured and sold by Childbro. Childbro argues that the principal bases for Hart's allegations of the violation of trade secrets and misappropriation by Childbro are the features of the DIZZY DOODLER which incorporate a two-speed motor switch into the vibrating pen and the marketing of the pen in a deluxe form with a set of stencils. Childbro represents that it has not manufactured or sold a novelty pen with a motor switch or manufactured or sold a deluxe version of the novelty pen which contains a set of stencils.

Childbro has submitted to the court the declaration of Harry Moorhouse, in which he states that the only novelty pen being manufactured and marketed by Childbro that is comparable in its features with the pen of Hart is a novelty pen with a single speed motor switch which has no stencils.

Childbro states that this novelty pen has been available in the marketplace and commercially distributed for at least a year.

Childbro states that at least three major customers of its novelty pen have received notification of the lawsuit from Hart and have expressed reluctance in handling Childbro's novelty pen as a result of such notification. Childbro contends that the notification of the lawsuit by Hart goes beyond the proper range of notification, in that, it implies that by handling the novelty pen which Childbro currently manufactures and markets, a customer of Childbro is exposing itself to liability by somehow participating in the alleged misappropriation or unauthorized use of Hart's trade secrets.

Childbro argues that the actions of Hart have unjustifiably and unlawfully hampered to a serious extent the ability of Childbro to compete fairly and effectively with Hart in the marketplace with respect to its single-speed novelty pen, an unpatented product, which has been fully and publicly disclosed for a year or more.

Hart argues that its action has been necessary in order for it to comply with the Oregon Trade Secrets Misappropriation Statute, O.R.S. 646.461 *et seq.*, which requires Hart to put third parties on notice with regard to the misappropriation of trade secrets or to forego causes of action against those parties. Hart submits as Exhibit A to its opposition a flier which shows a novelty pen called the DIZZY DOODLER, which has two speeds, and includes a set of stencils, with specific neon colors depicted.

Hart argues that its notices to the trade have been accurate and specific as to the nature of this action and as to the bases for exposure to legal liability of the companies being contacted. Hart argues that there has been no showing by Childbro of bad faith on the part of Hart, which Childbro concedes is necessary to be entitled to the requested relief.

Hart argues that by introducing even the one-speed pen, Childbro, on information and belief, utilized the marketing plans

which Hart confidentially disclosed to Childbro and which are trade secrets. Hart argues that the use of these marketing plans constitutes actionable use of a trade secret by improper means to acquire knowledge in violation of O.R.S. 646.-461(2)(b).

Hart argues that it has been accurate in its letters, and that it has specifically identified the trade secret to the extent it is able to do so without further disclosure of its own trade secrets. Hart asserts that as a claimant in a trade secret action, it must put prospective purchasers on notice or give up its causes of action against them.

In reply, Childbro argues that Hart should not be allowed to continue to threaten customers of Childbro with litigation if the customers purchase and then sell Childbro's competitive DIZZY DOODLER pen because Hart admits that the SQUIG-GLE WRITER PEN is not itself claimed to be a trade secret since it was on the market as of the time of the asserted confidential disclosure to Childbro. Childbro argues that the alleged trade secrets of 1) the use of stencils with the pen; 2) a two-speed motor [switch]; 3) specific neon color combinations; 4) detailed marketing plans; and 5) production drawings are not entitled to protection as a trade secret under the laws of the State of Oregon, and that, in any case, Childbro's product was independently developed by the product designer for Childbro without Childbro receiving any information from Hart, directly or indirectly.

## APPLICABLE STANDARD

The Ninth Circuit applies two tests for determining whether to grant a preliminary injunction: the traditional test and the alternative test. *Caribbean Marine Servs. Co. v. Baldrige,* 844 F.2d 668 (9th Cir. 1988). Under the traditional test, the court must consider (1) the likelihood that the moving party will prevail on the merits; (2) whether the balance of irreparable harm favors the moving party; and (3) whether the public interest favors the moving party. *Northern Alaska Envtl. Ctr. v. Hodel,* 803 F.2d 466, 471 (9th Cir.1986).

Under the alternative test, the court must consider (1) whether the motion raises serious questions on the merits; and (2) whether the balance of hardships tips decidedly in favor of the moving party. *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1201 (9th Cir.1980).

## ANALYSIS AND RULING

Childbro recognizes that the holder of a right to an intellectual property may notify others in the industry of its right to that intellectual property if it acts in good faith and does not try to intimidate persons who would not be under legal liability for using and selling the competitor's product. *Lucasey Mfg. Corp. v. Anchor Pad Int'l, Inc.,* 698 F.Supp. 190 (N.D.Cal.1988).

Childbro contends that. the extent of the actions taken by Hart improperly implies that Childbro's single-speed novelty pen is subject to this lawsuit and improperly represents that Hart has a trade secret claim against Childbro and the customers of Childbro.

A review of the letters sent by Hart to the customers of Childbro show that these letters are accurate in that they specifically describe the features of Childbro's novelty pen as involving a two-speed motor. There are no facts to suggest to the court any bad faith on the part of Hart. However, the court may grant a moving party the preliminary relief requested where the party shows that it is likely to prevail on the merits and the balance of hardships tips in its favor.

O.R.S. 646.461(4) states: "'Trade secret' means information ... that ... [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure." Hart concedes that the SQUIGGLE WRITER PEN itself is not a trade secret because it was on the market when the alleged trade secrets were disclosed. There is no basis on the record for this court to conclude that trade secret protection under the laws of the State of Oregon is appropriate for the use of stencils, a neon color scheme,

or a two-speed switch in that these items appear to be generally known to the public. The court finds that Childbro has shown that there is a likelihood that it may prevail on the merits of this case. The court finds that the balance of hardships tips in favor of Childbro and will grant the relief requested.

Defendants' Motion for Temporary Restraining Order (# 7–1) is granted. Defendants' Motion for Preliminary Injunctive Relief as to Plaintiff's Misleading and Threatening Communications to the Trade (# 7–2) is scheduled for oral argument on Tuesday, June 9, 1992, at 1:30 p.m.

## OPINION ON MOTION FOR PRELIMINARY INJUNCTION

The matter before the court is Defendants' Motion for a Preliminary Injunction as to Plaintiff's Misleading and Threatening Communications to the Trade (# 21).

### BACKGROUND

On June 1, 1992, this court granted defendants' motion for an order temporarily restraining plaintiff from making misleading and threatening communications to the trade. On June 9, 1992, the parties appeared before the court and represented that they could reach an agreement as to defendants' motion for a preliminary injunction. Therefore, the hearing on defendants' motion for a preliminary injunction was cancelled. The parties thereafter informed the court that they could not reach an agreement. Defendants' motion for a preliminary injunction was then heard on June 23, 1992.

Defendants, Childbro Toys Ltd. and its related parties of Hong Kong (Childbro), move the court for an order enjoining plaintiff, Hart Enterprises, Inc. (Hart), from issuing further communications to the trade, including the trade press, and from threatening customers and prospective customers of Childbro with lawsuits if such customers and prospective customers purchase and sell the DIZZY DOODLER, a novelty vibrating pen manufactured and sold by Childbro. Childbro contends that

the letters sent by Hart to the trade incorrectly imply that by purchasing the one-speed DIZZY DOODLER which Childbro manufactures and markets, a customer of Childbro exposes itself to liability for the misappropriation or the unauthorized use of trade secrets belonging to Hart. Childbro concedes that it may not market a two-speed novelty pen. Childbro represents that it has not marketed the two-speed version of the DIZZY DOODLER which had prompted Hart to file this action.

Hart concedes that it has no claim against Childbro for the manufacture or marketing of the DIZZY DOODLER with the one-speed switch. Hart argues, however, that the two-speed switch on Childbro's SQUIGGLE WIGGLE WRITER and the marketing information that Hart disclosed to Childbro are properly the subject of its cause of action for trade secret misappropriation. Hart agrees that the representation made by Childbro that it has not sold any of the units with two-speed switches and will not do so in the future obviates the need for Hart to further inform the trade about the alleged misappropriation of trade secrets, but that Childbro has not agreed that they will not market the two-speed units in the future.

### ANALYSIS AND RULING

Childbro agrees not to market a two-speed novelty pen in the future and represents that it has not sold the two-speed version of the DIZZY DOODLER which had prompted Hart to file this action. Hart concedes that it has no claim against Childbro for the manufacture or marketing of the one-speed DIZZY DOODLER which Childbro is marketing. The issue as to if and when Childbro may market a two-speed novelty pen is not before the court on Childbro's motion for a preliminary injunction.

In the letter dated March 4, 1992 from Hart to Fred Meyer, Hart does not state clearly that Hart makes no claims against Childbro relating to the one-speed DIZZY DOODLER which Childbro markets. Since there are no grounds upon which Hart may make a claim against Childbro relating to

the one-speed DIZZY DOODLER, any further communication to the trade should clearly state that Hart makes no claim relating to the one-speed DIZZY DOODLER.

## CONCLUSION

Defendants' motion for a preliminary injunction (# 21) is granted. Hart is enjoined 1) from issuing further misleading communications to the trade, including the trade press; and 2) from explicitly or impliedly threatening customers and prospective customers of Childbro with suit if such customers purchase or otherwise deal in the one-speed DIZZY DOODLER novelty pen manufactured and sold by Childbro. The court will not require a bond to be posted by defendants at this time.